UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA PORTER, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED AIRLINES, INC., <br><br> Defendant. | Case No. 22-cv-04886-RFL <br><br> **ORDER GRANTING SUMMARY JUDGMENT AND DENYING AS MOOT MOTION TO STRIKE, MOTION TO EXCLUDE, AND MOTION TO AMEND RULE 26 DISCLOSURES** <br><br> Re: Dkt. Nos. 27, 46, 47, 48 |

Engracia Figueroa, a woman with quadriplegia, passed away a few months after her wheelchair was damaged on a cross-country United Airlines flight. Sandra Porter (Figueroa's successor in interest), Lettice Mahoney, George Porter, and LaJuana Reid ("Plaintiffs") now bring this suit contending that United negligently damaged Figueroa's wheelchair and that Figueroa's use of an ill-fitting temporary replacement wheelchair caused her preexisting pressure sore to widen and become fatally infected. However, it is undisputed that Figueroa selected the ill-fitting replacement herself with her own longtime wheelchair vendor, and had declined to use United's wheelchair vendor. There is no evidence from which a reasonable jury could infer that it would be foreseeable to United that, after her wheelchair was damaged, Figueroa would select an ill-fitting replacement wheelchair for herself that would lead to her death. For example, Plaintiffs present no evidence that Figueroa's conditions made it difficult to find a properly fitted replacement, let alone that United was aware of Figueroa's conditions and thus that such difficulties would be foreseeable. United's Motion for Summary Judgment is **GRANTED**, for the reasons further explained below. This order assumes the reader is familiar with the facts, the

applicable legal standard, and the arguments made by the parties.

*Undisputed Facts.*  Engracia Figueroa suffered from quadriplegia and a leg amputation. (Dkt. No. 27 at 9.)[1]  She required a customized wheelchair for mobility and had a significant history of pressure sores on her buttock from wheelchair use.  (*Id.*)  To relieve pressure from her sores, she used a removable pressure-relieving cushion.  (Dkt. No. 43-2 ¶¶ 24, 25.)  Several months before her death, Figueroa took a United Airlines flight from California to Washington D.C. and back.  (Dkt. No. 27 at 10.)  When she returned, the joystick on her wheelchair was found to be damaged.  (*Id.*)  Figueroa elected to rent a temporary replacement wheelchair from her longtime wheelchair supplier, which United agreed to pay for, rather than obtaining a replacement through United's vendor.  (Dkt. No. 27 at 10–11.)  Because of delays in working with Figueroa's chosen vendor, she waited in an airport courtesy wheelchair for five hours before receiving the temporary replacement wheelchair and leaving the airport.  (Dkt. No. 27 at 10; Dkt. No. 28-7 at 11.)

United commissioned Figueroa's wheelchair supplier to repair Figueroa's original wheelchair.  (Dkt. No. 27 at 10–11.)  The supplier first tendered the repaired wheelchair to Figueroa a week after the flight, but Figueroa did not accept the chair until nearly two months after the flight.  (Dkt. No. 29, Kemp Decl. ¶ 9; Dkt. No. 43-4 ¶ 19.)  Upon Figueroa's repeated requests, United also ordered a permanent replacement wheelchair about a month after the flight, which was delivered another one-and-a-half months later.  (Dkt. No. 29, Kemp Decl. ¶ 9; Dkt. No. 28-5 at 34.)  Tragically, throughout the nearly four months after the flight, Figueroa's chronic open sore worsened and, after several hospitalizations, Figueroa passed away.  (Dkt. No. 27 at 13.)  Plaintiffs then brought this suit, asserting a single count of negligence, against United.

*Legal Standard.*  Federal Rule of Civil Procedure 56 governs motions for summary judgment.  Summary judgment permits a court to enter judgment on factually unsupported claims.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  Granting summary judgment is

---

[1] Citations to the parties' briefs refer to facts conceded by Plaintiffs as undisputed.  Page numbers reflect the pagination applied by the court's electronic case filing system.

proper if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party has the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.  The movant may satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322-23.  Where the party moving for summary judgment does not bear the burden of proof at trial, it may show that no genuine issue of material fact exists by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Id.* at 325.  The moving party is not required to present evidence to negate the elements of the non-moving party's claim. *Id.* at 323.

The burden then shifts to the opposing party to provide admissible evidence beyond the pleadings to show that summary judgment is not appropriate. *See Celotex*, 477 U.S. at 322, 324.  The court must review the record as a whole and draw all reasonable inferences in favor of the non-moving party. *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).  However, unsupported conjecture or conclusory statements are insufficient to defeat summary judgment. *Id.*; *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008).  A party opposing summary judgment must come forward with "significant probative evidence tending to support its claim that material, triable issues of fact remain." *Sanchez v. Vild*, 891 F.2d 240, 242 (1989).

Under California law, the elements of negligence are "duty, breach of duty, causation and damages." *Johnson v. Nw. Airlines, Inc.*, No. C 08-02272 VRW, 2010 WL 5564629, at *4 (N.D. Cal. May 5, 2010).  A plaintiff in any negligence suit bears the burden to demonstrate "a legal

duty to use due care, a breach of such legal duty, and [that] the breach [is] the proximate or legal cause of the resulting injury." *Dix v. Live Nation Ent., Inc.*, 56 Cal. App. 5th 590, 605 (2020).

***Duty to Return the Wheelchair in Its Original Condition.*** United does not dispute that, under governing federal regulations, it was required to "return wheelchairs, other mobility aids, and other assistive devices to the passenger in the condition in which [it] received them." 14 C.F.R. § 382.129 (2024). United conceded both in its briefing and at oral argument that it had this duty, and that it did not return the wheelchair in its original condition under the undisputed facts of the case. (Dkt. No. 27 at 21.) As such, United undisputedly breached the duty at issue.

Plaintiffs, however, have failed to produce evidence to allow a reasonable jury to conclude that this damage to the wheelchair was the direct and proximate cause of Figueroa's death. Proximate cause limits "the extent to which a defendant should be held liable for unforeseeable consequences." *Novak v. Cont'l Tire N. Am.*, 231 Cal. Rptr. 3d 324, 329 (2018). To satisfy proximate cause, "there must be some reasonable connection between the original negligence and its consequences, between the harm threatened and the harm done." *Id.* Moreover, "[p]roximate cause analysis is also concerned with intervening forces operating independent of defendant's conduct." *Id.* "To impose liability it is not enough to show that an injury would not have occurred in the absence of the negligent act, but it must be shown that the act was the efficient cause of the injury—the act from which the injury followed in continuous sequence unbroken by any efficient intervening cause." *Johnson*, 2010 WL 5564629, at *8 (quoting *Girard v. Monrovia City School Dist.*, 264 P.2d 115 (Cal. Ct. App. 1953)). Where an injury was brought about by a later cause of independent origin, the question of proximate cause "revolves around a determination of whether [that later cause] was foreseeable by the defendant or, if not foreseeable, whether it caused the injury of a type which was foreseeable." *Cole v. Town of Los Gatos*, 205 Cal. App. 4th 749, 770 (2012) (internal quotations omitted). The burden rests on the plaintiff to prove that the alleged negligence was the proximate cause of their injuries. *Spencer v. Beatty Safway Scaffold Co.*, 141 Cal. App. 2d 875, 882 (1956).

Here, Plaintiffs' theory is that Figueroa died because her replacement wheelchair did not

4

fit her customized cushion, which led her pressure sore to widen and become infected, eventually leading to her death months later. But Figueroa is the one who picked the ill-fitting replacement wheelchair. It is undisputed that Figueroa elected to use her original wheelchair vendor to supply the at-home replacement wheelchair, and Figueroa—not United—managed all correspondence with that vendor. (Dkt. No. 29, Kemp Decl. ¶ 8.) It is difficult to understand how United could foresee that Figueroa might select—and continue to use—a replacement wheelchair that would worsen her pre-existing injury. *See Deas v. Mel's Taxi, LLC*, No. CIV 08-00534 HG-LEK, 2010 WL 4811972, at *8 (D. Haw. Nov. 18, 2010) (applying analogous negligence principles under Hawaii law and finding unforeseeable that a plaintiff, whose motorized wheelchair was damaged by defendant taxicab driver, would own and use a backup wheelchair that causes elbow injuries).

*Johnson v. Northwest Airlines, Inc.*, No. C 08-02272 VRW, 2010 WL 5564629 (N.D. Cal. May 5, 2010), is instructive. In that case, the defendant airline had failed to bring a wheelchair to the plane to escort the plaintiff to her connecting flight. *Id.* at *1. While waiting, the plaintiff was informed by an agent that the agent did not know if a wheelchair could be obtained at that time, and the plaintiff became concerned about getting to her connecting flight. *Id.* at *1-*2. The plaintiff got up and used a moving walkway, which led to her falling. *Id.* at *2. The court, applying California law, concluded that the plaintiff's decision to walk unassisted down a moving walkway broke the chain of causation and that no reasonable juror could find that plaintiff's subsequent fall was the direct or proximate result of the airline's conduct. *Id.* at *9; *see also Nethaway v. N.W.A., Inc.*, No. 97-CV-70878-DT, 1997 WL 33564932, at *2 (E.D. Mich. Nov. 19, 1997) (finding no proximate cause on nearly identical facts as *Johnson*).

Similarly, Figueroa's selection and continued use of an ill-fitting replacement wheelchair broke the chain of causation. Plaintiffs contend that it should have been foreseeable to United that Figueroa would have a hard time finding a properly fitting wheelchair if hers was damaged. But Plaintiffs do not submit evidence sufficient to create a genuine issue of fact as to that point. Although it is undisputed that Figueroa's wheelchair was highly customized and her cushion was

5

custom-made, Plaintiffs do not submit any evidence that replacement wheelchairs with dimensions that fit Figueroa's cushion were in short supply or difficult to obtain. Furthermore, the undisputed evidence is that United was unaware of the highly customized nature of Figueroa's wheelchair and cushion, and their importance to Figueroa's health. According to the record, Figueroa never alerted United staff of her specific medical situation at any point before or after the flight. Nor did she inform either airport staff or the replacement wheelchair manufacturer that the respective wheelchairs she received could not fit her pressure-relieving cushion, so that they could have remedied the situation. (Dkt. No. 28-7 at 13–14.) While it may have been foreseeable to United that Figueroa would need to use a replacement wheelchair, there is no evidence from which a reasonable jury could infer that it was foreseeable to United that Figueroa would select an ill-fitting replacement wheelchair and would die from that choice, given the information United had available. *See Girard v. Monrovia City Sch. Dist.*, 264 P.2d 115, 119 (Cal. Ct. App. 1953) ("Of course respondents could reasonably foresee that if a pupil is transferred to a different school he will take a different route and cross different streets, . . . but they cannot reasonably foresee that on any given street on any particular occasion, either a motorist or the pupil will fail to exercise ordinary care," resulting in a fatal accident.).

At oral argument, Plaintiffs suggested that the analysis must be undertaken on a broader level of generality: that is, whether it should have been foreseeable to United that negligently damaging *any* passenger's wheelchair may lead to serious injuries stemming from use of a replacement wheelchair. California courts, however, have held that proximate cause is a fact-specific inquiry that "appl[ies] in individual cases" and must "take into account the particular context in which any act or injury occurred." *Novak*, 231 Cal. Rptr. 3d at 329. This analysis is distinct from analyzing foreseeability in the context of what duties of care are owed. *Id.* (contrasting the "varying approaches" in analyzing foreseeability for proximate cause versus for imposing a duty of care). In determining the standard of care, courts "evaluate *more generally* whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed." *Cabral v. Ralphs Grocery Co.*,

6

248 P.3d 1170, 1175 (2011) (emphasis added); *see also Novak*, 231 Cal. Rptr. 3d at 329 (in analyzing duties of care, courts need to "promulgate relatively clear, categorical, bright-line rules of law applicable to a general class of cases").

Moreover, even if proximate cause were analyzed at a higher level of generality, Plaintiffs have submitted no evidence on which a reasonable jury could find that it was foreseeable to United in general that damaging a wheelchair would cause serious injury or death to its user due to the difficulty of finding a proper replacement. Plaintiffs do not show, for example, that many wheelchair passengers travel with easily aggravated open sores or use highly customized wheelchairs, that such wheelchairs are exceedingly time-consuming or difficult to replace, or that temporary loss of use of a particular build of wheelchair foreseeably causes injury leading to death.

***Duty to Repair and/or Replace Wheelchair.*** Although United had a duty to repair, and if necessary, replace, the damaged wheelchair, the undisputed facts show that United complied with this duty.

As an initial matter, the Court rejects United's argument that such a duty is preempted by the Air Carrier Access Act ("ACAA"). 49 U.S.C. § 41705. Field preemption, on which United relies, occurs when "[s]tates are precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance." *Arizona v. United States*, 132 S. Ct. 2492, 2501 (2012). The Ninth Circuit has set out the following test to determine whether the requirements for field preemption have been met: "First, we ask whether the particular area of aviation commerce and safety implicated by the lawsuit is governed by 'pervasive [federal] regulations.' If so, then any applicable state standards of care are preempted. Even in those areas, however, the scope of field preemption extends only to the standard of care. Local law still govern[s] the other negligence elements (breach, causation, and damages), as well as the choice and availability of remedies." *Gilstrap v. United Air Lines, Inc.*, 709 F.3d 995, 1006 (9th Cir. 2013) (citations and quotations omitted).

The duty to repair and, if necessary, replace the wheelchair is not preempted by federal

7

law. The closest on-point section of the ACAA is 14 C.F.R. § 382.131, which states that "[t]he basis for calculating the compensation for a lost, damaged, or destroyed wheelchair or other assistive device shall be the original purchase price of the device." But this section—nor any other section of the ACAA—does not address *when* the compensation should be provided, *whether* repair or replacements are adequate forms of compensation, or *what* counts as a satisfactory replacement. *See also Martin v. Midwest Express Holdings, Inc.*, 555 F.3d 806, 812 (9th Cir. 2009) (finding no comprehensive regulation of airstairs safety design when there was only one related regulation prohibiting a particular design that blocked emergency exits). Indeed, it is telling that there is currently a notice of proposed rulemaking addressing precisely these questions. Ensuring Safe Accommodations for Air Travelers With Disabilities Using Wheelchairs, 89 Fed. Reg. 17766 (proposed March 12, 2024) (to be codified at 14 C.F.R. pt. 382) (detailing carrier obligations to repair or replace damaged wheelchairs).

United points out that courts have found preemption even when there was no precise federal regulation on point. *See, e.g.*, *Montalvo v. Spirit Airlines*, 508 F.3d 464 (9th Cir. 2007); *Fry v. Hawaiian Island Air, Inc.*, No. 13-00233 KSC, 2014 WL 12569526 (D. Haw. Aug. 6, 2014). But those cases are distinguishable. Both *Montalvo* and *Fry* concerned federal regulation of warnings and air safety—situations that uniquely demand a uniform federal scheme. *See Montalvo*, 508 F.3d at 473 ("If the FAA did not impliedly preempt state requirements for passenger warnings, each state would be free to require any announcement it wished on all planes arriving in . . . . Such a 'patchwork of state laws in this airspace . . . would create a crazy quilt effect.'"). These considerations are not present here.

Nevertheless, Plaintiffs have not marshalled evidence to show that United breached any duty to repair or replace her damaged wheelchair. It is undisputed that United did repair, and replace, the wheelchair at issue. Plaintiffs seem to suggest that United was required to immediately offer to replace Figueroa's wheelchair, because any wheelchair with crush damage might have additional electrical damage that cannot be detected through external inspection and thus cannot be effectively repaired. But Plaintiffs provide no evidence that this is the appropriate

8

standard of care. There is no evidence that the industry standard, for example, is to replace rather than repair wheelchairs with crush damage or electrical damage of this type. Moreover, Plaintiffs do not demonstrate causation on this theory. There is no evidence that United's 37-day delay in agreeing to replace Figueroa's wheelchair caused her injuries and eventual death. Plaintiffs do not show that receiving the replacement wheelchair 37 days sooner would likely have altered the course of Figueroa's deterioration. Indeed, by Plaintiffs' own account, the critical widening of Figueroa's pressure sores occurred in the week after the flight, while using the temporary replacement wheelchair she had selected. Plaintiffs state that "the damage was already done by" seven days after the flight, and that "it is more likely than not [Figueroa] would have still suffered the same deterioration" even if she had her original wheelchair back in perfect condition by that date. (Dkt. No. 43-4 at 5.)

*Duty to Provide an Appropriate Airport Courtesy Wheelchair*. Plaintiffs imply that United had a duty to provide an appropriate airport courtesy wheelchair to Figueroa while she waited for her temporary replacement wheelchair to arrive. For the same reasons as above, this duty is not preempted by federal law. While air carriers have a duty to provide certain types of assistance to passengers with disabilities in moving around the airport terminal, *see* 14 C.F.R. § 382.91, the ACAA does not go so far as to prescribe the types of equipment that must be used.

Nonetheless, there is not sufficient evidence for a reasonable jury to conclude that United breached this duty, or that such a breach proximately caused her injuries. Again, Figueroa never voiced any concerns to United about the wheelchair while waiting at the airport, and Plaintiffs provide no evidence that United failed to exercise reasonable care in selecting that wheelchair given the options that were available. Even if there were a breach, Plaintiffs have not carried their burden to show a genuine dispute of material fact as to the element of proximate cause. There is no evidence that it was foreseeable to United that waiting in an airport courtesy wheelchair for a few hours could lead to severe injuries and death. Moreover, the undisputed facts are that Figueroa's own actions broke the causal chain. Figueroa chose to use her own wheelchair vendor for the temporary replacement rather than United's vendor, which was near

the airport and may have provided a replacement more promptly. (Dkt. No. 27 at 10.)

*     *     *

For the reasons described above, United's motion for summary judgment is **GRANTED**. United also moves to strike and exclude the declaration of Plaintiffs' medical causation expert Dr. Michel Brones (Dkt. Nos. 46, 47), while Plaintiffs seek to amend their Rule 26 expert disclosures to include the report of Dr. Brones (Dkt. No. 48.) Because the admission of Dr. Brones' declaration would not change the result of the summary judgment motion, the motions are **DENIED AS MOOT**. (Dkt. Nos. 46, 47, 48)

The Clerk of the Court shall enter judgment in favor of United and close the case.

**IT IS SO ORDERED.**

Dated: October 15, 2024

RITA F. LIN
United States District Judge